LANVIN, INC., Plaintiff,

v.

COLONIA, INC., Defendant.

No. 89–CIV–5333 (LJF).

United States District Court,
S.D. New York.

Oct. 28, 1991.

W. Bruce Johnson, Betsy Anderson, New York City, for plaintiff.

Marc Dreier, Donald J. Louou, New York City, for defendant.

## OPINION AND ORDER

FREEH, District Judge.

Plaintiff Lanvin, Inc. ("Lanvin") and third-party defendant Lanvin Parfums, S.A. ("Lanvin Parfums") have moved this Court for summary judgment on all claims asserted by or against Lanvin in this action. For the reasons stated at oral argument on October 21, 1991 and below, the motion for summary judgment is denied.

### FACTS

In 1981, Lanvin, exclusive licensee of various French perfumes, granted the predecessor of defendant Colonia, Inc. ("Colonia") the exclusive right to use Lanvin's trademarks and to manufacture and distribute Lanvin products in the United States. (Motion at 6–7). In December 1983, Colonia succeeded to its predecessor's rights and obligations under both the. License and Supply Agreements with Lanvin. (*Id.*).

---

Under the terms of the License Agreement, Colonia and its distributors are prohibited from selling Lanvin products "under such circumstances that the resale of those [products] outside of [the United States] may reasonably be expected to result ..." (Motion at 8). After discovering quantities of Lanvin products traceable to Colonia outside the United States and conducting an audit of Colonia's books that indicated sales of Lanvin products not previously reported (*Id.* at 10–18), Lanvin unilaterally terminated the agreement with Colonia. (*Id.* at 18) (in view of its findings, Lanvin "determined not to permit Colonia to invoke the 60–day notice and cure period provided in ... the License Agreement."). Lanvin also initiated this action, seeking a declaratory judgment that Colonia had breached the agreements and claiming damages in excess of $2,000,000.

Colonia counterclaimed against Lanvin, arguing that Lanvin breached the License and Supply Agreements by (1) failing to provide Colonia with the requisite sixty-days notice and opportunity to cure the alleged breach; (2) selling Lanvin products under such circumstances that Lanvin should have reasonably expected that the products would be exported to the United States; (3) failing to provide Colonia with the fragrance "essence" required to manufacture new products; and (4) wrongfully terminating the two agreements. Colonia also brought a third-party complaint against Lanvin's parent company, Lanvin Parfums, claiming that Lanvin Parfums should guaranty any liability Lanvin may have to Colonia. (*Id.* at 3–4).

Pursuant to Fed.R.Civ.P. 65, Colonia moved for a temporary restraining order and preliminary injunction to prevent Lanvin and Lanvin Parfums from allowing another party to manufacture and distribute Lanvin products in the United States. Colonia also sought to protect its right to receive fragrance essence in time to meet orders for the 1990 Christmas season.[1] After a three-day evidentiary hearing, the Court denied Colonia's request for an injunction, concluding that Colonia had not proved either irreparable harm or a substantial likelihood of success on the merits. (June 1990 Order and Opinion, 739 F.Supp. 182, 185).

Lanvin has now moved for summary judgment, claiming that the evidence adduced at the preliminary injunction hearing supports a ruling in its favor. Specifically, Lanvin claims that (1) the undisputed documentary evidence of discrepancies between Colonia's reported sales and actual sales of Lanvin products justifies Lanvin's termination of the License and Supply Agreements; (2) Lanvin was justified in refusing to provide Colonia with an opportunity to cure the alleged breach; (3) Colonia's demands for injunctive relief should be dismissed because Colonia failed to demonstrate irreparable harm; and (4) Colonia failed to raise issues of fact regarding its claim that Lanvin permitted its products to be transshipped into the United States. (Motion at 3–5).

Colonia opposes the motion for summary judgment, claiming that (1) material issues of fact remain in dispute; (2) Colonia has been denied the opportunity to take discovery on these issues; and (3) in any event, Lanvin failed to comply with the notice requirements under the agreements. (Opposition at 2).

## DISCUSSION

■ Fed.R.Civ.P. 56 provides that summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In determining motions for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion—in this case, Colonia. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). Summary judgment is not appropriate, however, when issues re-

---

1. Apparently, the majority of Lanvin's stock was sold to another company, Orcofi S.A., in February 1990. At that time, Orcofi announced that it would eventually sell half of its shares to Colonia's major competitor, L'Oreal. In its motion for a preliminary injunction, Colonia claimed that it would be irreparably harmed if L'Oreal began marketing Lanvin products.

garding a party's intent are raised. *See Westhemeco Ltd. v. New Hampshire Ins. Co.*, 484 F.Supp. 1158, 1162–63 (S.D.N.Y.1980).

▪ Contrary to Lanvin's claims, it is not clear that it was "justified" in terminating the License and Supply Agreements, or in failing to give Colonia the requisite notice of default under those agreements. The contract language regarding "transshipping" outside the U.S. is ambiguous and merely states that Colonia and its distributors must refrain from selling Lanvin products under circumstances that would "reasonably be expected to result" in transshipping. (June 1990 Opinion and Order at 185). As Colonia's 3(g) statement indicates, questions of fact arise whether Colonia or its distributors had any reason to believe transshipping was probable, and whether Colonia knew of any of the instances of transshipping alleged by Lanvin. Moreover, Colonia has come forward with an explanation for the differing sales figures discovered by Lanvin during its audit. (Opposition at 16–23). Contrary to Lanvin's claims, evidence of contradictory sales reports and Lanvin products being sold outside the United States does not, standing alone, support a finding that Colonia breached the License Agreement.

▪ In addition, Colonia may have a legitimate claim that by failing to comply with the notice requirements under the agreements, Lanvin breached their agreement. Section 22(a)(i) of the License Agreement specifically states that a party may terminate that agreement if the other party is in default and "such default continues for a period of sixty (60) days after notice to the other party." (Opposition at 66). It is undisputed that Lanvin notified Colonia of its "breach" and terminated the agreements simultaneously. Lanvin argues that Colonia's breach went to the "essence" of the parties' agreement and thus was incapable of cure. (Motion at 34). Colonia disputes that assertion and states

that, had it been notified, it could have purchased the goods that had been found in storage in Europe and elsewhere and could have used registration numbers on its products to trace the source of the transshipped goods and then acted to prevent such transshipping in the future.[2] (Opposition at 69–70). Despite the accounting inconsistencies, there is little evidence that Colonia knowingly and willfully failed to perform under the agreement. In any event, evaluating Colonia's conduct and intent requires a factual analysis, which is inappropriate here. Lanvin is not entitled to judgment as a matter of law on the notice issue.

▪ Lanvin argues that summary judgment is appropriate because a "testimonial hearing, with cross-examination" has already been had on *"all* the issues which form the basis for Lanvin's motion." (Motion at 29). However, the Court's earlier finding that Colonia was unlikely to succeed on the merits should not foreclose Colonia from proceeding to trial. *American International Group, Inc. v. London American International Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981) ("[I]t remains true that summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial."). Although evidence was introduced during the three-day preliminary injunction hearing, the purpose of that hearing was to evaluate Colonia's entitlement to injunctive relief, not Lanvin's right to judgment on the merits. In determining a motion for summary judgment, we may consider the Court's findings of fact and conclusions of law in a prior motion for preliminary injunction. However, those earlier findings are not binding, particularly where, as here, hearsay evidence was introduced at the preliminary injunction hearing but would not be admissible in the summary judgment context. *See University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d

---

2. Judge Edelstein concluded without explanation that the notice provision was not an "exclusive" remedy and thus did not prevent Lanvin from implementing the usual remedy of immediate termination upon a "breach which is material or goes to the root or essence of the contract." (June 1990 Opinion and Order at 195).

**128**

175 (1981) (findings of fact and conclusions of law issues at preliminary injunction stage not binding in later proceedings); Fed.R.Civ.P. 56(e) (supporting and opposing affidavits must set forth facts that would be admissible in evidence). Accordingly, Lanvin's motion must be denied.

SO ORDERED.